IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DARYL M. CROWDER, # K-88903, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:15–cv–0170–MJR–SCW |
| | ) |
| DENNIS LARSON | ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM AND ORDER

**REAGAN, Chief Judge:**

## I. INTRODUCTION

Plaintiff, Daryl Crowder, brings this civil suit pursuant to 42 U.S.C. § 1983, for the deprivation of his rights at Big Muddy River Correctional Center ("Big Muddy") and Pinckneyville Correctional Center ("Pinckneyville"). Plaintiff claims that he suffered permanent injuries related to three falls which would not have occurred had he been granted low bunk and low gallery permits at Big Muddy and Pinckneyville. Specifically, Plaintiff alleges that Defendant, Dr. Dennis Larson, was deliberately indifferent to his request for permits needed for his pre-existing medical conditions (Count 1). Plaintiff also claims that the falls and resulting injuries were because

Defendant failed to order the permits which he claims he should have received automatically due to his age (Count 2).

This matter is currently before the Court on Defendant Larson's Motion for Summary Judgment filed on November 11, 2016. (Doc. 48). Plaintiff, proceeding *pro se*, was given 30 days to file a response and has failed to do so. The Court deems that failure an admission of the merits of Defendant's motion pursuant to **SDIL Local Rule 7.1(c);** *Flynn v. Sandahl*, **58 F.3d 283, 288 (7th Cir. 1995) (a failure to respond constitutes an admission that there are no disputed material facts).**

II. FACTUAL BACKGROUND

When Plaintiff first saw Defendant in October 2010 for complaints of back pain, Defendant examined Plaintiff and advised him to work on range of motion exercises. (Doc. 48-4, p. 1-3). In September 2011, Defendant prescribed Motrin after Plaintiff experienced an incident of numbness in his legs. (Doc. 48-6, p. 1-2). Between September 2011 and April 2013, Plaintiff was seen regularly in the hypertension/cardiovascular care clinic for an existing heart condition. (Doc. 48-7, p. 1-5). During that time, Plaintiff did not request a low bunk permit or a low gallery permit. (Doc. 48-2, p. 37).

Plaintiff testified that he fell from his bunk on April 9, 2013, due to a back spasm and then again on April 13, 2013, due to dizziness. (Doc. 48-2, p. 17-18). While Plaintiff stated that his first bunk fall took place on April 9th, when he was coming down from his top bunk and had a back spasm, the medical record indicates that Plaintiff was

having back spasms and difficulty getting up on his bunk. The record makes no mention of a fall. (Doc. 48-8, p. 1). The April 13th record, which does not mention dizziness, indicates that Plaintiff fell off of his bunk while climbing down due to back spasms and leg pain. (Doc. 48-9, p. 1). Plaintiff did not see Defendant at that time, and the injury report was completed by a nurse. (Doc. 48-9, p. 2).[1]

When Plaintiff saw Defendant on April 22, 2013 with complaints of neck and lower back pain and dizziness, Defendant placed Plaintiff in the infirmary until May 2—ten days. (Doc. 48-11, p. 1-17). He was given a low bunk permit, pain medications, and instructions to walk slowly and come back with any increase in pain. (*Id.* at p. 16-17). At his follow-up appointment with Defendant later in May, Plaintiff's medications and low bunk permit were prescribed for three months. (Doc. 48-12, p. 1-2). At Plaintiff's August follow-up appointment with Defendant, Plaintiff's low bunk permit and medications were again ordered to be continued for three more months. (Doc. 48-13, p. 1-2). Plaintiff does not recall requesting a low gallery permit during that time. (Doc. 48-2, p. 37).

---

[1] Plaintiff's medical records indicate that one fall occurred in April. While Plaintiff states that he fell twice in April, Plaintiff's deposition is unclear on the dates of the falls and whether leg pain and/or back spasms caused the falls. (Doc. 48-2, p. 19-20). Medical records indicate that Plaintiff was treated by a nurse for back pain and spasms on April 9th, for a fall on April 13th, and was seen again on April 17th prior to seeing Defendant Larson on April 22.

On November 15, 2013, prior to the scheduled follow-up appointment for his low-bunk permit renewal, Plaintiff visited the clinic complaining of neck, shoulder, and arm pain. (Doc. 48-15). His records note that he had a future follow-up appointment to renew the bottom bunk permit. Defendant testified, and the medical records indicate, that Plaintiff did not see Defendant on November 15. (*Id*.; Doc. 48, p. 4). The next record made by Defendant is dated November 26, 2013 and states that Plaintiff fell down six stairs when his legs gave out. (Doc. 48-16). On that day, Plaintiff was admitted to the Crossroads Community Hospital. (Doc. 48-17, p. 1). There, Dr. Szyfer examined Plaintiff and found posterior spurring, disk herniation, and spinal canal stenosis and admitted him to the hospital for an MRI. (Doc. 48-17, p. 2). No reference is made to dizziness. (Doc. 48-17, p. 1-6).

Plaintiff was discharged from the hospital the next day in stable condition. (Doc. 48-17, p. 3-4). Plaintiff was again granted a low bunk permit by Defendant. (Doc. 48-2, p. 56). Upon Defendant's recommendation, Plaintiff was admitted to the hospital in July 2014 for a C5-6 anterior cervical discectomy and fusion. (Doc. 48-20). In October 2014, Plaintiff was involved in an altercation with his cellmate and was subsequently transferred to Pinckneyville. (Doc. 48-2, p. 56; Doc. 48-23).

On November 15, 2013, prior to the scheduled follow-up appointment for his low-bunk permit renewal, Plaintiff visited the clinic complaining of neck, shoulder, and arm pain. (Doc. 48-15). His records note that he had a future follow-up appointment to renew the bottom bunk permit. Defendant testified, and the medical records indicate, that Plaintiff did not see Defendant on November 15. (*Id*.; Doc. 48, p. 4). The next record made by Defendant is dated November 26, 2013 and states that Plaintiff fell down six stairs when his legs gave out. (Doc. 48-16). On that day, Plaintiff was admitted to the Crossroads Community Hospital. (Doc. 48-17, p. 1). There, Dr. Szyfer examined Plaintiff and found posterior spurring, disk herniation, and spinal canal stenosis and admitted him to the hospital for an MRI. (Doc. 48-17, p. 2). No reference is made to dizziness. (Doc. 48-17, p. 1-6).

Plaintiff was discharged from the hospital the next day in stable condition. (Doc. 48-17, p. 3-4). Plaintiff was again granted a low bunk permit by Defendant. (Doc. 48-2, p. 56). Upon Defendant's recommendation, Plaintiff was admitted to the hospital in July 2014 for a C5-6 anterior cervical discectomy and fusion. (Doc. 48-20). In October 2014, Plaintiff was involved in an altercation with his cellmate and was subsequently transferred to Pinckneyville. (Doc. 48-2, p. 56; Doc. 48-23).

### III. APPLICABLE LAW

#### A. Summary Judgment Standard

Summary Judgment is proper only "if the admissible evidence considered as a whole shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Dynegy Mktg. & Trade v. Multi Corp.*, 648 F.3d 506, 517 (7th Cir. 2011) (internal quotation omitted) (citing FED. R. CIV. P. 56(a)). *See also Ruffin-Thompsons v. Experian Info. Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The party seeking summary judgment bears the initial burden of demonstrating—based on the pleadings, affidavits, and/or information obtained via discovery—the lack of genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

After a properly supported motion for summary judgment is made, the adverse party "must set forth facts showing that there is not genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting FED. R. CIV. P. 56 (e)(2)). A fact is material if it is outcome determinative under applicable law. *Id.* at 248; *Balance v. City of Springfield, Ill. Police Dep't*, 424 F.3d 614, 616 (7th Cir. 2005); *Hottenroth v. Vill. of Slinger*, 388 F.3d 1015, 1027 (7th Cir. 2004). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "The nonmovant must create more than mere doubt as to the material facts and will not prevail by relying on a mere scintilla of evidence to support

its position." *CAE, Inc. v. Clean Air Eng'g, Inc.*, **267 F.3d 660, 677 (7th Cir. 2001) (internal citations and quotations omitted).** An opposing party will only succeed "when they present definite, competent evidence to rebut the motion." *E.E.O.C. v. Sears, Roebuck & Co.*, **233 F.3d 432, 437 (7th Cir. 2000) (internal citations omitted).**

On summary judgment, the Court considers the facts in the light most favorable to the nonmovant. *Srail v. Vill. of Lisle*, **588 F.3d 940, 948 (7th Cir. 2009).** The Court will "draw all reasonable inferences in favor of the non-movant." *Id.* Even if the facts are not in dispute, "[s]ummary judgment is inappropriate when alternate inferences can be drawn from the available evidence." *Spiegla v. Hull,* **371 F.3d 928, 935 (7th Cir. 2004**), *abrogated on other grounds by Spiegla II*, **481 F.3d 961 (7th Cir. 2007). See also,** *Anderer v. Jones*, **385 F.3d 1043, 1064 (7th Cir. 2004).**

B.  Eighth Amendment Deliberate Indifference

Prison officials violate the Eighth Amendment's proscription against "cruel and unusual punishments" if they display deliberate indifference to an inmate's serious medical needs. *Greeno v. Daley*, **414 F.3d 645, 652-53 (7th Cir. 2005) (quoting** *Estelle v. Gamble*, **429 U.S. 97, 104 (1976) (internal quotation marks omitted)).** "Deliberate indifference to serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution." *Rodriguez v. Plymouth Ambulance Serv.*, **577 F.3d 816, 828 (7th Cir. 2009).** A prisoner is entitled to "reasonable

measures to meet a substantial risk of serious harm"—not to demand specific care. *Forbes v. Edgar*, **112 F.3d 262, 267 (7th Cir. 1997).**

In order to prevail on a claim of deliberate indifference, a prisoner who brings an Eighth Amendment challenge of constitutionally-deficient medical care must satisfy a two-part test. *Arnett v. Webster*, **658 F.3d 742, 750 (7th Cir. 2011).** The first prong is whether the prisoner has an "objectively serious medical condition." *Id.; accord Greeno*, **414 F.3d at 653.** "A medical condition is objectively serious if a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson." *Hammond v. Rector*, **123 F. Supp. 3d 1076, 1084 (S.D. Ill. 2015) (citing** *Pyles v. Fahim*, **771 F.3d 403, 409 (7th Cir.2014)).** It is not necessary for such a medical condition to "be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Gayton v. McCoy*, **593 F.3d 610, 620 (7th Cir. 2010).** *Accord Farmer v. Brennan*, **511 U.S. 825, 828 (1994) (violating the Eighth Amendment requires "deliberate indifference to a** *substantial* **risk of** *serious* **harm") ((internal quotation marks omitted) (emphasis added).** Only if the objective prong is satisfied is it necessary to analyze the second, subjective prong, which focuses on whether a defendant's state of mind was sufficiently culpable. *Greeno*, **414 F.3d at 652-53.**

Prevailing on the subjective prong requires a prisoner to show that a prison official has subjective knowledge of—and then disregards—an excessive risk to inmate

health. *Id.* **at 653.** The plaintiff need not show the individual "literally ignored" his complaint, but that the individual was aware of the condition and either knowingly or recklessly disregarded it. *Hayes v. Snyder*, **546 F.3d 516, 524 (7th Cir. 2008).** "Something more than negligence or even malpractice is required" to prove deliberate indifference. *Pyles*, **771 F.3d at 409;** *see also Hammond*, **123 F. Supp. 3d at 1086 ("isolated occurrences of deficient medical treatment are generally insufficient to establish Eighth Amendment deliberate indifference").**

C. **Equal Protection**

The Fourteenth Amendment Equal Protection Clause protects individuals from governmental discrimination. *Swanson v. Chetek*, **719 F.3d 780, 783 (7th Cir. 2013).** Typically an equal protection claim involves discrimination on the basis of race, national origin, or sex, though claims are also permitted by a 'class-of-one' if an individual claims to have received differential treatment for no rational reason. *See id.* To state a class-of-one claim an individual must "allege that he was intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id.* **(internal quotations omitted).**

IV. ANALYSIS

**Deliberate Indifference Claim**

Plaintiff's Complaint, as narrowed by the Court's threshold order (Doc. 5), alleges that Defendant was deliberately indifferent in failing to prescribe a low bunk

and low gallery permit for his dizziness and muscle spasms. Plaintiff alleges that this failure led to Plaintiff suffering a fall on November 26, 2013, which caused severe injuries. Defendant does not deny that Plaintiff's dizziness and muscle spasms may be objectively serious, but denies that he treated any of Plaintiff's medical conditions with deliberate indifference. (Def.'s Mot. at 12).

The Court finds no evidence in the record that, Defendant either ignored or intentionally refused to treat Plaintiff's lower back and muscle spasms. When Plaintiff went to the clinic with lower back pain and back spasms on April 9, 2013, he was treated by someone other than Defendant. He was again treated by someone other than Defendant when he fell off of his bunk on April 13th. When Defendant saw Plaintiff on April 22, 2013, he reacted to Plaintiff's complaint of back pain and dizziness by keeping Plaintiff in the infirmary for observation and rest for ten days. After that stay, Defendant did not merely send Plaintiff on his way, but gave him pain medication, prescribed a slow walk, and issued a low bunk permit. At follow-up appointments during the next six months, the prescription and low bunk permit were continuously renewed by Defendant. When Plaintiff went to the clinic in mid-November, he was unable to see Defendant, but it was noted on his record that he would have a follow-up for the low bunk renewal.

The thrust of Plaintiff's main allegation is that that Defendant refused to issue a low bunk or low gallery permit for his conditions. But the evidence in the record shows

that Defendant issued and renewed the April low bunk permit multiple times. Further, Plaintiff acknowledges that at no time did he request a low gallery permit. Although Plaintiff alleges that his November fall was a result of his lack of low gallery permit, there is no evidence showing that Defendant was deliberately indifferent by only prescribing Plaintiff a low bunk permit. Nothing in the record suggests that he had knowledge of Plaintiff having problems with dizziness as the medical records do not mention complaints of dizziness associated with the earlier falls. Nor is there evidence that Plaintiff requested a low gallery permit.

Additionally, there is no evidence that Defendant was deliberately indifferent after the November fall. Defendant ordered Plaintiff transferred to Crossroads Community Hospital for examination the same day as the fall. There, Plaintiff was subsequently examined by another doctor and received an MRI and neurological consult. Eventually, Plaintiff was scheduled for and underwent back surgery for his injuries. There are no allegations that there was any inappropriate delay between his fall and the surgery he ultimately received. On the record before the Court, there is nothing to support Plaintiff's claim of deliberate indifference.

**Equal Protection Claim**

Plaintiff's complaint also alleges that the denial of his low bunk and low gallery permit violated his equal protection rights as prison policy allowed such permits for inmates in Plaintiff's condition. Plaintiff alleges that he should have been provided a

permit automatically because he was over fifty. However, Plaintiff acknowledged that it is not mandatory for inmates over age fifty to automatically receive a low bunk or low gallery permit. (Doc. 48-2, p. 58-59). Rather, an inmate becomes eligible for such a permit at age fifty. Because age fifty triggers eligibility for a permit, rather than mandatory issuance of a permit, Plaintiff has not identified a way that he was treated differently from others. Further, as Defendant points out, Plaintiff turned fifty in 2012 and received a low bunk permit within a year, by April of 2013, for his medical needs. This occurrence supports the notion that it was not age, so much as need that gave rise to the issuance of low bunk permits. Based on this scant evidence, the Court finds that reasonable jurors could not conclude that Plaintiff's equal protection rights were violated and summary judgment is appropriate on this count.

V. CONCLUSION

For those reasons, this Court finds no evidence that Defendant Larson was deliberately indifferent to Plaintiff's medical condition or that he violated Plaintiff's equal protection rights. Accordingly, the Court GRANTS Defendant Larson's motion for summary judgment (Doc. 48). As no claims remain for trial, the Clerk is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED**.

DATED:  April 28, 2017

*s/ Michael J. Reagan*
MICHAEL J. REAGAN
**Chief Judge**
**United States District Court**